Shauck, J.
The title of this ordinance suggests that it was passed in the exercise of authority supposed to be conferred upon the municipality by Section 3670, General Code, which authorizes the municipality to regulate and license peddlers, and Section 3672 which confers authority to license “hawkers, peddlers,” etc., and Section 3673, which assumes to confer authority “To license transient dealers, persons who temporarily open stores or places for the sale of goods, wares or merchandise, and each person who, on the streets, or traveling from place to place about such municipality, sells, bargains to sell, or solicits orders for goods, wares or merchandise by retail.” By its title the ordinance applies only to hawkers, peddlers and hucksters. In essential respects the provisions of the ordinance are limited to the subjects of its title, for the first section provides only that it shall be “unlawful for any hawker, peddler or huckster to sell or canvass,” etc.; and the second section provides that “A hawker, peddler or huckster who desires to sell any article, goods, wares or merchandise within *126 the corporate limits of the aforesaid village of Tippecanoe, or who desires to canvass for the sale of such article, goods, wares or merchandise within the corporate limits of said village, shall apply to the mayor for a license,” etc. Notwithstanding these terms limiting the operation of the ordinance to hawkers, peddlers and hucksters, there is an apparent attempt to apply to them provisions of Section 3673 of the statute, which so far as the statute is concerned do not seem to be limited to persons following those peculiar vocations. The averments of the petition, which the demurrer admits to be true, exhibit the course and conduct of the plaintiff’s business and make it appear to be essentially different from the conduct of business by any of the three classes of persons named in the ordinance. It has a fixed place from which it does business; it does not carry about the merchandise which it offers for sale; it does not sell at the time it offers for sale, but enters into contracts for future sales; it does not carry on negotiations or any part of its business upon the streets, highways or public places, but at the residences of its customers. That these features broadly and substantially distinguish its business from that carried on by hawkers, peddlers and hucksters is made clear by the dictionaries and numerous cases cited in the briefs. The apparent attempt of the village council to exercise the power assumed to be conferred by Section 3673 of the statute to require license from those who at the residences of their customers bargain to sell or solicit orders for goods, wares, or merchandise by retail, and the attempt of its officers to enforce the ordinance *127 with that interpretation seems to require that to the interpretation of the section there be applied a limitation which the constitution imposes. The concession that the business of the plaintiff is within the terms of this section of the statute will not aid the defendant, for if so interpreted the statute very plainly transcends the limits prescribed by the constitution. So much has been said respecting the guaranties of such constitutional provisions as are contained in our Bill of Rights demonstrating that the guaranteed right to the enjoyment and use of property includes the right to make contracts generally, that the cases cited in the briefs show that it has become common knowledge that the general assembly may not by the discriminating imposition of burdens participate in the rivalries of business, except to the extent that may be authorized by consideration of the public weal. It is not necessary to enlarge upon the subject since the first proposition of the syllabus in Marmet v. The State, 45 Ohio St., 63, is an authoritative and exclusive definition of the subjects upon which a license fee may be imposed: “The general assembly has power (except as limited by section 18 of the schedule to the constitution) to regulate occupations by license, and to compel, by imposition of a fine, payment of a reasonable fee, where a special benefit is conferred by the public upon those who follow an occupation, or where the occupation imposes special burdens on the public, or where it is injurious to or dangerous to the public.” It is true that the court was there considering a statute to exact the fee by the direct act of the general assembly, but the *128 point is wholly unimportant since it could not confer upon municipalities a power which it does not itself possess. It may not any more authorize the municipal council to lay an imposition upon the ordinary use of the streets and the private residences of the city than it could provide for such imposition by an act of general operation. We might regret this conclusion if we were informed that in the village of Tippecanoe those who sell merchandise at retail outnumber those who buy from them. Not being so informed, we are serene in the belief that obedience to the requirements of the constitution will in this instance, as it usually does, result in the greatest good to the greatest number; nor need we vex ourselves to inquire why at a time when so much is done by legislation and adjudication to prevent the stifling of competition by private contracts, an attempt should be made to stifle it by legislation.

Judgment reversed and demurrer overruled.

Spear, C. J., Davis, Price, Johnson and Donahue, JJ., concur.